***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and oral arguments of the parties. The appealing party has shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms, with modifications, the Opinion and Award of Deputy Commissioner Phillips and enters the following Opinion and Award:
 *********** *Page 2 
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as: STIPULATIONS
1. All stipulations contained in the pre-trial agreement are received into evidence.
2. The parties to this action are subject to and bound by the North Carolina Workers' Compensation Act. An employer-employee relationship existed between the Employee-Plaintiff and the Employer-Defendant at the time of the alleged injury.
3. A set of medical records was marked and stipulated as Exhibit #1 and received into evidence by the Deputy Commissioner. Subsequent to the hearing before the Deputy Commissioner, medical records were marked as exhibits in the deposition of Dr. Moore and received into evidence.
 ***********
The following documentary evidence was received into evidence before the Deputy Commissioner as:
 EXHIBITS a. Stip. Ex. #1-Medical Records
 b. Plaintiff's Ex. #1-Timesheet with date of 4/30/06
 c. Plaintiff's Ex. #2-Timesheet with dates from 4/24/06 to 5/7/06
 d. Plaintiff's Ex. #3-Incident Report
 e. State's Ex. #1-Secretary of State's Records
 f. State's Ex. #2-ESC Records *Page 3 
 g. State's Ex. #3-NCIC Database Coverage Screen for Lewis Treatment Facility, Inc.
 h. State's Ex. #4-5/26/06 Workers' Compensation Policy Sheet
 i. State's Ex. #5-NCIC Database Coverage Screen for McEachin Treatment Facility
 j. State's Ex. #6-ESC Records for McEachin Treatment Facility
 k. Defendant's Ex. #1-Copy of Timesheet
 l. Deposition of Dr. Moore
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was fifty-one (51) years old. Plaintiff completed the twelfth grade of high school and obtained an associates degree in therapeutic recreation from Sampson Community College. Plaintiff completed nurses' aide courses and worked as a CNA. Plaintiff's CNA license lapsed in the year 2000.
2. Defendants, Thaddies Butler and Doretha M. Butler, owned two separate group homes, McEachin Treatment Facility and Lewis Treatment Facility, Inc. These group homes were separate businesses with different employees. Lewis Treatment Facility, Inc. was a group home for Level 3 children who have severe behavioral problems. Lewis Treatment Facility, Inc. was incorporated on January 6, 2006, according to the Secretary of State's records. On April 30, 2006, Defendant-Employer, Lewis Treatment Facility, Inc. had nine (9) employees.
3. Plaintiff worked for Defendant-Employer, Lewis Treatment Facility, Inc., as a direct care aide. Plaintiff's responsibilities included assisting residents with academic skills, household skills, and personal skills, and documenting said progress as daily progress reports. *Page 4 
4. Plaintiff earned $10.50 per hour and worked approximately two and a half days per week with an average weekly wage for her employment with the Defendant, Lewis Treatment Facility, Inc., of $199.50 per week, yielding a compensation rate of $133.00 per week.
5. Plaintiff kept foster children, who she received through an agency called Firm Foundation. In addition to her employment at Lewis Treatment Facility, Inc., Plaintiff was employed at Whitfield Homes, another group home.
6. On April 30, 2006, Plaintiff was not scheduled to work, but traded shifts with Brian James, an employee of Defendant-Employer, Lewis treatment Facility, Inc. Plaintiff reported to work at approximately 8:00 p.m. to work the remainder of Brian James' shift until midnight. The children who Mr. James supervised at Lewis Treatment Facility, Inc. required intervention and required the ability to chase them down if they ran away. There was one resident who was designated "a runner" and Plaintiff had been called upon to chase him down on a previous occasion.
7. On April 30, 2006, around 9:30 p.m., while working at Lewis Treatment Facility, Inc., Plaintiff went out to get a mop for spilled water in the kitchen. Plaintiff stepped out onto the ramp leading from the kitchen door and was frightened by a cat. When Plaintiff attempted to turn to go back into the kitchen, Plaintiff fell, injuring both her right and left knees.
8. Plaintiff experienced pain at the time of her fall and was unable to get to her feet without assistance. Bronette Matthews, who was working the shift with Plaintiff, assisted Plaintiff to get into a chair.
9. Bronette Matthews contacted Laura Moore, who was Plaintiff's sister and the Supervisor for Defendant-Employer, Lewis Treatment Facility, Inc., group home. Ms. Moore *Page 5 
called Ms. Lena Clark, the "qualified person", and informed her of Plaintiff's injuries. Ms. Moore also called the Butlers, speaking with Ms. Butler, and informing her of Plaintiff's injuries at work.
10. Ms. Matthews assisted Plaintiff to her automobile and Plaintiff drove herself home where she was met by Ms. Moore who assisted Plaintiff into her home. The following morning Plaintiff sought medical attention. Ms. Moore contacted Ms. Butler, the owner of Lewis Treatment Facility, Inc., and was informed by Ms. Butler that when Plaintiff got to the medical provider that Plaintiff was to call Ms. Butler to authorize treatment.
11. On May 1, 2006, Plaintiff presented to Clinton Urgent Care where she promptly contacted Ms. Butler for permission for necessary treatment. The medical records indicate that Ms. Butler informed the medical providers that Defendants would be responsible for Plaintiff's medical treatment.
12. At the time Plaintiff presented to Clinton Urgent Care, she complained of right and left knee pain. Plaintiff was diagnosed as having bilateral knee trauma secondary to trauma. X-rays of Plaintiff's right and left knees did not reveal any fractures, but revealed moderate degenerative changes in the right knee and mild degenerative changes in the left knee. Plaintiff was given a brace and crutches for her right knee. Plaintiff had a preexisting back condition for which she took Lorcet. Plaintiff was advised to continue using Lorcet for the pain in her knees.
13. On May 9, 2006, Plaintiff had a telephone conversation with Thaddies Butler, wherein Mr. Butler asked Plaintiff to lie about her injury and say that she was injured at her job with Whitfield Homes. He then asked Plaintiff to lie and state that her injury happened on a different date after the actual injury, because Mr. Butler did not have any workers' compensation insurance at the time of Plaintiff's accident. *Page 6 
14. On May 9, 2006, Plaintiff presented to Tricounty Carolina Pines Community Health Center with a history that she had slipped and twisted her right knee on April 30, 2006. Plaintiff was still on crutches and needed pain medication. Plaintiff informed personnel at Tricounty that she had an upcoming orthopedic appointment on May 23, 2006. Plaintiff's right knee was tender on the anterior medial patella with swelling. It was further noted that an MRI exam at that time was limited by her large size and costs. Plaintiff was advised to continue the use of her crutches, an ace bandage, and heat and ice.
15. On May 23, 2006, Plaintiff presented to the Pinehurst Surgical Clinic where she was examined by Dr. John Moore, a Board Certified orthopedic surgeon. Plaintiff reported that she had fallen at work on April 30, 2006, injuring both knees, the right worse than the left. Plaintiff reported a history of swelling and giving way of the right knee and pain with stair climbing. Plaintiff required crutches since May 1, 2006, and was unable to bear weight on her legs. Plaintiff was diagnosed as having right knee injury, given a steroid injection, and was advised to return in one month.
16. Dr. Moore testified that Plaintiff's exam was consistent with the history of a fall on April 30, 2006.
17. On June 8, 2006, Plaintiff presented again to Carolina Pines Community Health for unrelated health problems. At that time, Plaintiff's right knee was reported as painful and Plaintiff was having difficulty with her right hip as well. She was continuing to take Lorcet as pain medication.
18. On June 26, 2006, Plaintiff again presented to Dr. Moore. She continued to complain of right knee pain, and was utilizing a cane for ambulation. Plaintiff's pain was exacerbated with ambulation and weight bearing activities. Plaintiff was diagnosed as having hip *Page 7 
joint pain and knee joint pain, and was informed that if her symptoms persisted they would schedule an MRI.
19. By October 10, 2006, Plaintiff presented to Pinehurst Surgical Clinic where Dr. Moore examined Plaintiff and found that Plaintiff was still using a cane for ambulation and reporting burning sensations along the outside portion of her right thigh and calf. Plaintiff's pain had not improved and was exacerbated by prolonged sitting or standing, going from a seated to standing position, stair climbing, squatting, ambulation, and weight bearing activities. Dr. Moore scheduled an MRI at Moore Regional Hospital.
20. On October 12, 2006, the findings of the MRI indicated an oblique tear of the posterior horn of the medial meniscus extending to the superior articular surface. The MRI also indicated diffuse thinning and loss of articular cartilage overlying the medial femoral chondial and the medial tibial plateau, subchondral edema in both areas. On October 19, 2006, Plaintiff was given an injection for her right knee.
21. On November 13, 2006, Plaintiff presented to Carolina Pines Community Health to refill her medications. Plaintiff's pain in her right knee persisted. On November 21, 2006, Plaintiff presented to Pinehurst Surgical Clinic and again was examined by Dr. Moore, at which time she was diagnosed with osteoarthritis bilaterally in her knees and was requested to return on an as needed basis.
22. Dr. Moore testified to a reasonable degree of medical certainty that Plaintiff reached maximum medical improvement from her April 30, 2006 injury on November 21, 2006. Dr. Moore testified to a reasonable degree of medical certainty that Plaintiff's injuries are an exacerbation of a previously underlying degenerative change and osteoarthritis of both knees. Dr. Moore did not assign any permanent partial disability and indicated that as of November 21, 2006, *Page 8 
Plaintiff was able to return to work. Dr. Moore indicated in his report of November 21, 2006, that Plaintiff may require frequent breaks secondary to the degenerative changes, intermittent injections in both knees, and indicated that she would eventually require surgery to address those conditions.
23. Dr. Moore testified to a reasonable degree of medical certainty that Plaintiff sustained injuries to her right and left knees as a result of her fall on April 30, 2006. Dr. Moore could not state to a reasonable degree of medical certainty that Plaintiff sustained a meniscal tear of her right knee as a result of the fall. Dr. Moore testified that Plaintiff was not malingering or staying out of work for any reason other than her injuries.
24. After Plaintiff's injury by accident on April 30, 2006, she was unable to perform the work at Defendant-Employer, Lewis Treatment Facility, Inc., and at Whitfield Homes until November 21, 2006. With the assistance of her grown children, Plaintiff was able to care for two foster children within her home who were Level 2 children. These children were not as disturbed or challenging as the Level 3 children she was required to supervise at the Lewis Treatment Center, Inc.
25. Dr. Moore was unable to render an opinion as to whether Plaintiff was capable of performing her duties for Defendant-Employer, Lewis Treatment Facility, Inc.; however, Dr. Moore noted that Plaintiff was able to ambulate only by crutches until June 27, 2006, after which she required the use of a cane, and that her condition was aggravated by prolonged standing, prolonged sitting, rising from a chair, ambulating, and weight bearing activities, all of which were listed activities reasonably necessary to perform Plaintiff's job with Defendant-Employer, Lewis Treatment Facility, Inc. Plaintiff testified that she experienced pain in her knees and was unable to perform her duties as required to supervise Level 3 disturbed children. *Page 9 
26. In March of 2007, Plaintiff was diagnosed with cancer and began treatment at UNC Hospital for her cancer, and discontinued any further treatment with regard to her right knee. In April of 2007, Plaintiff applied for Social Security disability as a result of her cancer and has been approved, and is now considered disabled as a result of her cancer since August 2007.
27. Since Plaintiff refused to falsify reports of her injuries, Defendant, Thaddies Butler, informed Plaintiff that "there was nothing else he could do for her", and refused to pay for any treatment for Plaintiff's injuries or for Plaintiff's time out of work.
28. The records of the Employment Security Commission show that in the last quarter of 2005, Defendant-Employer, Lewis Treatment Facility Inc., reported ten (10) employees. The records of the Employment Security Commission show that in the first quarter of 2006, Defendant-Employer, Lewis Treatment Facility Inc., reported eleven (11) employees, the second quarter of 2006, ten (10) employees, the third quarter of 2006, fourteen (14) employees, and the fourth quarter of 2006, sixteen (16) employees. The records of the Employment Security Commission show that in the first quarter of 2007, Defendant-Employer, Lewis Treatment Facility Inc., reported twenty-three (23) employees, the second quarter of 2007, twenty-four (24) employees and the third quarter of 2007, twenty-three (23) employees. The records of the Employment Security Commission show that in the third quarter of 2008, Defendant-Employer, Lewis Treatment Facility Inc., reported seventeen (17) employees and the first six days of the fourth quarter of 2008, twenty-four (24) employees. Defendant-Employer, Lewis Treatment Facility, had no workers compensation insurance from the start of business in November 2005 through April 30, 2006, nor for the above-named quarters.
29. The individual Defendant, Thaddies Butler, Owner of Lewis Treatment Center, testified his wife, Doretha Butler was the Manager, but the two of them performed many duties *Page 10 
for the businesses together and they both wrote checks for the two businesses and for the insurance premiums. Defendant, Thaddies Butler, testified that he had workers' compensation insurance for both facilities; however, Mr. Butler testified that he went to Insurance Agent Jones to ask about workers' compensation insurance after his wife told him about Plaintiff's fall. Defendants, Thaddies and Doretha Butler, obtained insurance for the McEachin Treatment Facility on May 26, 2006. Defendants, Thaddies and Doretha Butler, obtained insurance for Lewis Treatment Facility, Inc., on November 7, 2008. Both Thaddies Butler and Doretha Butler had the ability and authority to maintain workers' compensation coverage for their aforementioned business operation, Lewis Treatment Facility, Inc., and they each willfully failed to do so.
30. The Full Commission finds that Plaintiff's attorney has spent, pursuant to an affidavit submitted by Plaintiff's attorney to the Commission, twenty-two (22) hours in the defense of this appeal. The Full Commission finds that $3,000.00 is a reasonable award of attorney's fees in the defense of this appeal.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 30, 2006, Plaintiff sustained compensable injuries by accident to both her knees and said injuries arose out of and in the course of Plaintiff's employment with Defendant-Employer, Lewis Treatment Facility, Inc. N.C. Gen. Stat. § 97-2(6).
2. As a result of Plaintiff's compensable injuries by accident, Plaintiff was disabled as defined by N.C. Gen. Stat. § 97-2(9) from April 30, 2006, through November 21, 2006, and *Page 11 
Plaintiff is therefore entitled to temporary total disability compensation at the rate of $133.00 per week from April 30, 2006, through November 21, 2006. N.C. Gen. Stat. § 97-2(9).
3. As a result of Plaintiff's compensable injuries by accident, Plaintiff is entitled to have Defendant-Employer, Lewis Treatment Facility, Inc., provide and pay for medical treatments related to the injuries by accident that are reasonably required to "effect a cure or give relief". N.C. Gen. Stat. § 97-25.
4. Any employer required to secure payment of compensation who refuses and neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases pursuant to N.C. Gen. Stat. § 97-94(b).
5. Anyone with the ability and authority to bring their business into compliance with N.C. Gen. Stat. § 97-93 who fails to do so, may be assessed a penalty equal to one hundred percent (100%) of the amount of compensation due Defendant's employees injured during the time his business failed to comply with N.C. Gen. Stat. § 97-93 as set out in N.C. Gen. Stat. § 97-94(d). Thaddies Butler and Doretha Butler, as owners and operators of the Employer-Defendant Lewis Treatment Facility, Inc., had the ability and authority to bring the Employer into compliance with the North Carolina Workers' Compensation Act and failed to do so.
6. Defendant-Employer has defended this claim without a reasonable basis or grounds and is subject to assessment of attorney's fees and costs pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following: *Page 12 
 AWARD
1. Defendant-Employer, Lewis Treatment Facility, Inc., shall pay to Plaintiff $4,389.00 for 33 weeks of compensation due to lost wages from May 1, 2006, through November 21, 2006. This sum has accrued and shall be paid in one lump sum.
2. Defendant-Employer, Lewis Treatment Facility, Inc., shall pay, or reimburse those who paid all medical providers for services rendered to Plaintiff as a result of her compensable injuries to the extent those services tended to provide relief or effect a cure.
3. Defendant-Employer, Lewis Treatment Facility, Inc., shall pay the cost of the deposition of Dr. John Moore and any expert witness fee associated therewith.
4. Defendant-Employer, Lewis Treatment Facility, Inc., is ordered to pay the State of North Carolina penalties in the sum of $20,000.00 which represents $50.00 per day for 400 of the days that Defendant-Employer failed to secure workers' compensation coverage in accordance with the Workers' Compensation Act.
5. An additional penalty of 10% of the amount of the compensation due to Plaintiff in this matter is assessed against Thaddies Butler and Doretha Butler, individually, for failing to comply with N.C. Gen. Stat. § 97-93. A check in the amount of $438.90 shall be made payable to the North Carolina Industrial Commission and sent directly to Assistant Attorney General Tracy Curtner, at the Fraud Unit of the North Carolina Industrial Commission.
6. Defendant-Employer Lewis Treatment Facility, Inc., Defendants Thaddies Butler and Doretha Butler, individually, shall bear all costs, to include an award of attorney's fee to Plaintiff's attorney in the amount of $3,000.00 pursuant to N.C. Gen. Stat. § 97-88.1
This the 22nd day of April, 2010. *Page 13 
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER